IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| JAYSON SCHOTT | ] | |
| | ] | |
| | ] | CASE# _____ |
| *Plaintiff* | ] | |
| | ] | |
| | ] | **C O M P L A I N T** |
| V. | ] | |
| | ] | |
| | ] | |
| BAC HOME LOANS SERVICING, LP; | ] | JURY TRIAL DEMANDED |
| BANK OF AMERICA; AMERICA'S | ] | |
| WHOLESALE LENDERS; MERSCORP; | ] | |
| BANK OF NEW YORK-MELLON; | ] | |
| GOLDBECK, MCCAFFERTY& | ] | |
| MCKEEVER | ] | |
| Jointly, severally and/or in the alternative | ] | |
| *Defendants* | ] | |

**C O M P L A I N T**

AND NOW comes Plaintiff, by and through his attorney, Lucas & Nowak, LLP, and complains

of the Defendants and alleges as follows:

1.  Plaintiff Jayson Scott is an adult who resides at 231 Mardi Gras Drive, Pittsburgh, PA

    15239.

2.  Defendant America's Wholesale Lender (hereinafter referred to as "Lender") is the

    Lender of the subject Note with a principal place of business at 4500 Park Granada,

    Calabasas, Ca, 91302, doing business in Allegheny County.

3.  Defendant BAC Home Loans Servicing, LP, is an Agent and subsidiary of the Defendant

    Bank of America and is a debt collector as defined by 15 U.S.C. § 1692 et seq. and is a

mortgage loan servicer with its principal place of business at 4500 Park Granada, in Calabasas, California 91302, doing business in Allegheny County.

4. Defendant Bank of America ("BOA") is a banking corporation and Parent of BAC Home Loans Servicing, LP, with a principal office at 100 North Tryon Street, Charlotte, North Carolina.

5. Defendant Bank of New York-Mellon is a banking corporation, and purports to be the holder-in-due-course and Trustee for Certificate holders CWABS, Inc, Asset-Backed Securities #2004-7 and is a "debt collector" as defined by 15 U.S.C. § 1692 et seq., with a principal place of business at 101 Barclay St., New York, New York 10286.

6. Defendant Mortgage Electronic Registration Systems, Inc., MERSCORP (hereinafter referred to as "MERS") is a Delaware corporation with a principal place of business at 1818 Library Street, Reston, VA 20190, and does business in the Commonwealth of Pennsylvania.

7. Defendant Goldbeck, McCafferty and McKeever ("GMM") is a "debt collector" as defined by 15 U.S.C. § 1692 et seq whose principal address is 701 Market St, Ste 5000, Philadelphia, PA 19106.

8. Any allegations about acts of any corporate or other business Defendants means that the corporation or other business did the alleged acts through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

9. At all relevant times, each Defendant committed acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint;

additionally, some of the Defendants acted as the agent for other Defendants, and all of the Defendants acted within the scope of their agency as if acting as the agent of another.

10. Knowing or realizing that other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts.

11. Each Defendant intended to and did encourage, facilitate or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

12. All Defendants engaged in continuous and multiple unfair and deceptive trade practices, fraud and misrepresentations that affected interstate commerce and proximately caused the herein injuries to the Plaintiff.

## JURISDICTION AND VENUE

13. Jurisdiction of this Court is under 28 U.S.C. § 1331, 12 U.S.C. 2601 et seq. (Real Estate Settlement Procedures Act); and 15 U.S.C. § 1692 et seq. (Fair Debt Collection Practices Act), and over the statutory and common-law violations of Pennsylvania and common law.

14. Venue is proper in this district because all defendants conducted business in Pennsylvania and the subject Note and Mortgage was executed in Pennsylvania.

## FACTUAL ALLEGATIONS

15. On or about July 21, 2004, Plaintiff executed an Adjustable Rate Note and a Mortgage with the Lender America's Wholesale Lender. A copy of the Mortgage is attached hereto, incorporated herein, and marked Exhibits "A" and "A-2."

16. The note was for $97,500.  A copy of the Note is attached hereto and incorporated herein and marked Exhibit "B".

17. The Defendant determined that the adjustable terms of the Note were to be based upon an 8.1% interest rate adjustable on a periodic basis to the "Index" of a "Twelve-Month Average" of the annual yields of United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates" and classified as the "Monthly Yields."

18. The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by twelve.  The most recent Index figure available 15 days before each Interest Rate Change Date is called the "Current Index."

19. The margin of the Lender calculates new interest rates by adding not greater than 9.6% and not less than 8.1% Margin" to the Current Index.

20. Paragraph 4(D) of the Note states "My interest rate will never be greater than 15.1%."

21. As security for the aforementioned Note, on April 26, 2005, Plaintiff executed a Mortgage (hereinafter referred to as the "Mortgage") identifying , as lender, MERS as "nominee for Lender and Lender's successor's and assigns ....  [and as a] beneficiary under [the instrument]. . ."

22. Plaintiff's loan was immediately sold and securitized after closing by America Wholesale Lender and placed into a Pooling and Servicing Agreement and converted into a stock of a Pass Through Vehicle.  The *mortgage title was never officially transferred to the trust* and as a result, the note was put out of eligibility for the trust under New York law.

23. There is no evidence that America's Wholesale Lender endorsed the Note to anyone or that the Mortgage was properly assigned to the now purported holder-in-due-course the Bank of New York-Mellon.

24. If such assignment did occur, Plaintiff was never notified of it pursuant to federal RESPA law.

25. The alleged loan was nevertheless registered on the SEC as a Real Estate Mortgage Investment Conduit (REMIC) Trust and became a Special Purpose Vehicle (SPV) for the purpose of tax exemption.

26. REMICs are investment vehicles that hold commercial and residential mortgages in trust and issues securities representing an undivided interest in these mortgages.

27. A master servicer of the REMIC was appointed as was a Trustee, Defendant Bank of New York-Mellon.

28. Normally, the Trustee of a Trust has the power and responsibility to administer the assets of the Trust but in the case of a REMIC no such power exists.

29. Once the REMIC containing Plaintiff's loan was formed, *the loan was converted into a security* owned by thousands of shareholders throughout the world and was traded on Wall Street.

30. At that point, the state of Plaintiff's loan changed and was converted forevermore into a stock.

31. Once Plaintiff's loan was securitized and converted, it forever lost its security.

32. Since the loan was sold and securitized into stock, the lender can no longer claim that it is a real party in interest, or even that the loan stills exists as a loan, since double dipping is a form of securities fraud.

33. A negotiable instrument can only be in one of two states after undergoing securitization, not both at the same time.  It can either be a loan or a stock.

34. Once the instrument is traded as a stock, it is forever a stock and therefore regulated, as this loan was, by the SEC as a stock.

35. The subject Mortgage states that the Mortgage secures the Promissory Note.

36. The Promissory Note, by conversion into stock, was extinguished as a collateralized asset and therefore the Trust secures absolutely nothing and the Bank of New York-Mellon, not being the real party in interest, has no standing to foreclose on Plaintiff.

37. Since the Lender sold the loan to a REMIC, it forever lost the ability to enforce, control or otherwise foreclose on Plaintiff's property, including the right to assign the Mortgage or endorse the Note.  It was no longer the real party of interest.

38. If the Bank of New York-Mellon owned the Note, it would have to be taxed on the interest earned from the Note.  If the REMIC owned the Note it would have a tax liability.

39. To avoid double taxation, under Internal Revenue Code 860, the loan was put into a SPV so that only the shareholders are taxed and therefore are the real parties in interest.

40. Because of IRS code 860, the Bank of New York-Mellon/Trustee is not the real and beneficial party in interest because the REMIC does not own the Note, the shareholders do.

41. By distributing the tax liabilities to the shareholders, the REMIC has also distributed the parties in interest.

42. Since a Promissory Note is only enforceable in its whole entirety and thousands of shareholders own the subject Note, no one of them can foreclose on Plaintiff's home.

43. The asset of the REMIC was registered and traded as a part of a security and as such cannot be traded out and is permanently attached and converted into stock preventing the Note from being assigned and securitized again and again which would create securities fraud.

44. Since Plaintiff's loan went into default, it was written off by the REMIC and received tax credits from the IRS, was therefore discharged, and settled destroying the Note forever.

45. After securitization, the Note cannot be re-attached to the Mortgage through adhesion.

46. Under the UCC, the Promissory Note is a one-of-a-kind instrument and any assignment must be as a permanent fixture onto the original Note much like a check.

47. There is no endorsement on the original Note.

48. The original Promissory Note has the only legally binding chain of title, otherwise the instrument is faulty.

49. The original Note had to be destroyed upon securitization because the Note and the stock cannot exist at the same time.

50. All Defendants lack standing to enforce the Note.

51. Under the terms of the Pooling and Servicing Agreement of BAC Home Loans Servicing, LP, the servicer can buy back the Note as a non-performing non-secured debt like collection agencies that buy non-performing credit card debts.

52. This purchase is of a *discharged asset* and cannot be re-adhered to the original Mortgage, since the original Note was a one-of-a-kind instrument, not part of the discharged asset.

53. Therefore the purchaser of the discharged asset can never be the holder-in-due-course of the original Note.

54. Under the UCC, the original Promissory Note is the only valid and legally binding chain of title for the Note.

55. The numerous attempts by Defendants MERS, Bank of New York-Mellon and BAC to claim ownership of the original Note by the purchaser of the discharged asset is fraudulent and is characterized as "reverse engineering."

56. There is no perfection of title.

57. Plaintiff's Note was unduly confusing and written in such a manner as to confuse Plaintiff and for the purpose of drawing Plaintiff into a default.

58. Upon information and belief, MERS was established in or around 1993 by members of the mortgage banking industry so as to create a centralized document custodial system through which mortgages can be easily transferred between members without having to record or pay county filing fees for such assignments.

59. Plaintiff never executed a note naming MERS as a party, nor was Plaintiff ever notified or informed of a transfer of the note to MERS.

60. No evidence exists to support the claim that MERS is or was ever was the holder in due course of the Note at issue in this action.

61. MERS, listed on the Mortgage as the "nominee" or agent, and as the one-time purported holder of the Note, by and through its membership rules, was not empowered to act as an agent or nominee for its members, and was without specific written approval from both principals and lacked the mandate to effectuate mortgage-related assignments, transfers or appointments of any kind.

62. There is no evidence to suggest that during the relevant time periods contemplated in this Action, MERS was empowered by both principals to effectuate any mortgage-related assignment, transfer or appointment.

63. On or about May 14, 2008, MERS wrongfully sued Plaintiff in the Court of Common Pleas, Allegheny County, for foreclosure.  A copy of the cover sheet of the Complaint is attached hereto, incorporated herein and marked Exhibit "C."

64. Plaintiff were never informed or notified of any transfer of the Note to Defendant Bank of New York-Mellon.

65. The Mortgage states that only the Lender can make an assignment.

66. No evidence exists to support the claim that the Bank of New York-Mellon is the holder in due course of the Note at issue in this action.

67. Plaintiff's mortgage was flawed from the date of origination of the loan because MERS was named as the beneficiary and nominee of the lender on the Mortgage, which was done for purposes of deception, fraud, confusing – and therefore harming – the Plaintiff, and theft of revenue from the local county government through the illegal avoidance of mortgage recording fees.

68. MERS is unregistered and unlicensed to conduct mortgage lending or any other type of business in the Commonwealth of Pennsylvania and has been and continues to knowingly, intentionally, illegally and fraudulently record mortgages and conduct business in Pennsylvania on a large scale and systematic fashion.

69. Neither MERS nor Bank of New York-Mellon is the original lender for the Plaintiff's subject Mortgage or Note herein.

70. In 2008, MERS attempted to be a party in standing during a foreclosure action against Plaintiff and purported to make an assignment to the Defendant Trustee Bank of New York-Mellon.

71. Neither MERS nor Bank of New York-Mellon are legally documented assignees of either the Plaintiff's Mortgage or Note and do not hold the original Mortgage nor have they ever held the Plaintiff's Note.

72. No Note or other evidence exists which could ever make the Plaintiff indebted to MERS or Bank of New York-Mellon in any way.

73. Neither MERS nor Bank of New York-Mellon ever had nor will they ever have the authority to assign the Mortgage to any entity.

74. Neither MERS nor Bank of New York-Mellon ever had any right to collect on the Note or enforce the Mortgage, nor have they ever had a right to hold, enforce or collect upon Plaintiff's Note.

75. At the time Plaintiff signed the Note and Mortgage, he was unknowingly converting his property into an asset of a MBS and was deliberately induced into signing a Negotiable Instrument, which was never intended as such, but was intended as collateral for a MBS.

76. The alleged Note in question started its life as a negotiable instrument, similar to a check. The negotiation and enforceability of the Note is governed by Article Three (3) of the Uniform Commercial Code.

77. The note that had been executed with the Mortgage became part of a pool of mortgages losing its individual identity as a note between a lender and a borrower; it merged with other unknown notes as a total obligation due to the investor or investors; it is no longer a

negotiable instrument, rather, collateral for a federally regulated Security under the confines of the SEC.

78. In actuality, MERS was not the "nominee" for the lenders; the true lenders were investors who had provided the funds for the loans through mortgage backed security pools which were held as trusts.

79. This fact was known to MERS and the Servicers and the subsequent assignees of any and all rights purported to have been assigned by MERS at the time the note and Mortgage was signed by Plaintiff and at the time of each and every later purported assignment by MERS, or others, of any interest in the note and Mortgage.

80. The proper parties to this action would be the investors of the mortgage-backed securities to which Plaintiff's loan was securitized; but these parties have no recorded interest in the Mortgage, which were never delivered to the Trustee for the mortgage backed security pool; therefore the note itself is, at best, unsecured rights to payment.

81. All Defendants knew that Plaintiff's loan was securitized or intended to be securitized prior to the preparation of the note and mortgage reflecting the loan.

82. All of the purported Assignments and transfers were done by the Defendants without the required corporate resolution giving authority for that person to conduct such assignments and transfers.

83. A "debt collector" under the statute is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

**84.** Attorneys who regularly engage in debt collection or debt collection litigation are covered by the FDCPA and their litigation activities must comply with the requirements of that Act.

## COUNT I
### Violation of FDIC Consumer Protection Paragraph 19 (b) (2) (viii)

85. All preceding paragraphs are incorporated as though fully set forth herein.

86. 12 CFR Part 226 et seq. states in pertinent part "2. Selection of index values. The historical example must reflect the method by which index values are determined under the program.  If a creditor uses an average of index values or any other index formula, the history given should reflect those values.  The creditor should select one date or, when an average of single values is used as an index, one period and should base the example on index values measured as of that same date or period for each year shown in the history.  A date or period at any time during the year may be selected, but the same date or period must be used for each year in the historical example.  For example, a creditor could use values for the first business day in July or for the first week ending in July for each of the 15 years shown in the example."

87. Pursuant to this section, the lender must provide the borrower with historical index values when the loan is an adjustable rate loan and adjustments are based on an index.

88. Plaintiff's loan is an adjustable loan and is based upon an index.

89. Defendant failed to make such required disclosure to the Plaintiff thereby causing harm to Plaintiff.

## COUNT II
### (DISCLOSURE VIOLATION PURSUANT TO 15 U.S.C. 1635, ET. SEQ.)

90. All preceding paragraphs are incorporated herein as though fully set forth.

91. The present case credit transaction is governed by the disclosure requirements of Title 15 USC 1635.

92. The UCC 1 lien applies to the transaction under revised Article 9 and to Defendants, because lien rights on the property arose in favor of Defendants as a result of the transaction.

93. Defendants failed and /or refused to meet the disclosure requirements of Revised Article 9 of the UCC, by not providing the notice required or filing it before during or immediately after the settlement, as mandated under the Article.

94. Plaintiff is specifically in the class of persons this statute was designed to protect.

95. As a direct, proximate, and foreseeable result of Defendants failure to provide proper notices, defendant is subject to loss of property and loss of use of property and other damages as a result of Defendants failure.

## COUNT III

**(DISCLOSURE VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.)**

96. All preceding paragraphs are incorporated herein as though fully set forth.

97. The Federal Reserve Board Interpretation, Title 12 Code of Federal Regulations Part 226, Supplement I, Paragraph 23(a)(1), provides that in the present case the transaction is rescindable for reasons above and below stated.

98. The disclosures made in relation to the consumer credit transaction were not presented in the manner required by law. Furthermore, the disclosures were not grouped together and

were not segregated from everything else as required by Title 12 Code of Federal

Regulations, Section 226.17(a)(1) and in this case were not given at all.

99. Plaintiff is specifically in the class of persons this statute was designed to protect.

100.      As a direct, proximate, and foreseeable result of Defendants failure to provide

proper notice/disclosure, defendant is subject to loss of property and loss of use of

property and other damages as a result of Defendants failure.

## COUNT IV

## (RIGHT TO RECIND VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.)

101.      All preceding paragraphs are incorporated herein as though fully set forth.

102.      The right to rescind or cancel settlement documents was unsigned by both parties,

and was not disclosed or given, as required by Title 12 Code of Federal Regulation,

Section 226.18 et seq.

103.      Plaintiff is specifically in the class of persons this statute was designed to protect.

104.      As a direct, proximate, and foreseeable result of Defendants failure to provide

proper notice/disclosure, defendant is subject to loss of property and loss of use of

property and other damages as a result of Defendants failure.

## COUNT V

## (RIGHT TO CANCEL VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.)

105.      All preceding paragraphs are incorporated herein as though fully set forth.

106.      There was no separate form to cancel, as required by Title 12 Code of Federal

Regulation, Section 226 et seq.

107.     Plaintiff is specifically in the class of persons this statute was designed to protect.

108.     As a direct, proximate, and foreseeable result of Defendants failure to provide

proper notice/disclosure, defendant is subject to loss of property and loss of use of

property and other damages as a result of Defendants failure.


## COUNT VII

**(DECEPTIVE GROUPING VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.)**

109.     All preceding paragraphs are incorporated herein as though fully set forth.

110.     The interest disclosures were not given together with other information within the

documents.

111.     Plaintiff is specifically in the class of persons this statute was designed to protect.

112.     As a direct, proximate, and foreseeable result of Defendants failure to provide

proper notice/disclosure, defendant is subject to loss of property and loss of use of

property and other damages as a result of Defendants failure.


## COUNT VIII

**(NO GOOD FAITH ESTIMATE VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.)**

113.     All preceding paragraphs are incorporated herein as though fully set forth.

114.     Plaintiff, as required by 12 Code of Federal Regulation, Section 226.18(c) and 12

USC 2601 et seq., received no good faith estimate copy

115.     Plaintiff is specifically in the class of persons this statute was designed to protect.

116.     As a direct, proximate, and foreseeable result of Defendants failure to provide

proper notice/disclosure, defendant is subject to loss of property and loss of use of

property and other damages as a result of Defendants failure.

## COUNT IX

### (CONSUMER STATEMENT MISSING VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.)

117.     All preceding paragraphs are incorporated herein as though fully set forth.

118.     A statement that the consumer should refer to the appropriate contract document

and clause for information about nonpayment, default, and the right to accelerate was not

given, as required by Title 12 Code of Federal Regulation, Section 226.18(p).

119.     Defendant is specifically in the class of persons this statute was designed to

protect.

120.     As a direct, proximate, and foreseeable result of Defendants failure to provide

proper notice/disclosure, defendant is subject to loss of property and loss of use of

property and other damages as a result of Defendants failure.

## COUNT X

### (DISCLOSURE VIOLATIONS, PURSUANT TO TITLE 15 U.S.C. SECTION 1601, ET. SEQ. AND REGULATION Z)

121.     All preceding paragraphs are incorporated herein as though fully set forth.

122.     Since this action was commenced, Defendants has continued and so continues to

violate the Consumer Credit Protection Act, Title 15 United States Code, Section 1601 et

seq., and Regulation Z, Title 12 Code of Federal Regulations, Part 226, which was

adopted pursuant to such Act, by failing to properly make the disclosures required by the Act and Regulation Z, as herein after more particularly set forth.

123.     Plaintiff is specifically in the class of persons this statute was designed to protect.

124.     As a direct, proximate, and foreseeable result of Defendants failure to provide proper notice, Defendant is subject to loss of property and loss of use of property and other damages as a result of Defendants failure.

## COUNT XI

### (FAILURE TO DISCLOSE CALCULATION OF MORTGAGE BALANCE, PURSUANT TO TITLE 12 CFR SECTION 226.4, ET. SEQ.)

125.     All preceding paragraphs are incorporated herein as though fully set forth.

126.     Defendants failed to disclose in or with the disclosure statements, because no disclosure statements were given, the amount of the balance to which the rate was applied and an explanation of how that balance was determined and further failed to disclose the fact that the balance is determined without first deducting all credits and payments made and payments as required by Title 12 Code of Federal Regulations, Section 226.4 et seq.

127.     Plaintiff is specifically in the class of persons this statute was designed to protect.

128.     As a direct, proximate, and foreseeable result of Defendants failure to provide proper acceleration notice, Defendant is subject to loss of property and loss of use of property and other damages as a result of Defendants failure.

## COUNT XII

### (FAILURE TO DISCLOSE ITEMIZATION OF CHARGES, PURSUANT TO TITLE 12 USC 2610 ET SEQ.)

129.     All preceding paragraphs are incorporated herein as though fully set forth.

130.     Defendants failed to disclose in or with the acceleration statement the amounts, itemized and identified by type, of charges other than finance charges debited to the account during the acceleration period as required by Title 12 Code of Federal Regulations, Section 226.21.

131.     Plaintiff is specifically in the class of persons this statute was designed to protect.

132.      As a direct, proximate, and foreseeable result of Defendants failure to provide proper notice, Defendant is subject to loss of property and loss of use of property and other damages as a result of Defendants' acts.


### COUNT XIII -
### VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT ("FDCPA") 15 USC § 1692
Defendants Goldbeck, McCafferty and McKeever, BAC, MERS

133.     All preceding paragraphs are incorporated herein as though fully set forth.

134.     Defendants misrepresented the character and legal status of the unlawful debt in violation of 15 USC 1692(e)(2), by sending false correspondence to Plaintiff and third persons and assisting in the filing of an unlawful foreclosure action in county court.

135.     Defendants threatened to take and did take actions that they could not legally take without the ruse and falsities committed upon the Plaintiff in violation of 15 USC 1692(e)(5).

136.     Defendants engaged in conduct that disgraced the Plaintiff in violation of 15 USC 1692(e)(7), by sending false correspondence to Plaintiff and third persons and assisting in the filing of an unlawful foreclosure action in county court.

137.     Although Plaintiff disputed the alleged debt, Defendants communicated false credit information to others and failed to communicate that the debt was disputed, when it

was disputed, in violation of 15 USC 1692(e)(8).

138.     Defendants stated numerous times that they were the lawful owners in interest of the debt or empowered to speak on behalf of the owner in interest, yet knew or should have known that they were not, and as such violated 15 USC 1692(e)(5).

139.     All Defendants engaged in unfair and deceptive means and attempts to collect the alleged debt in violation of 15 USC 1692 (f).

140.     Defendants attempted to collect the alleged debt in a manner and amount not authorized by the original MORTGAGE and Note in violation of 15 USC 1692(f)(1).

141.     Defendants threatened to unlawfully repossess the Plaintiff's property in violation of 15 USC 1692(f)(8).

142.     Plaintiff suffered actual damages from these violations.

143.     Pursuant to 15 USC 1692(k), Plaintiff are entitled to actual damages, statutory damages as set forth herein, and reasonable attorney fees and costs.

144.     Because the conduct of the Defendants was frequent and persistent and because the nature of the violations of the FDCPA were so egregious and because the FDCPA violations were a part of a deliberate scheme, Plaintiff are entitled to the maximum possible relief permitted under 15 USC 1692k(a).

**COUNT XIV.**
VIOLATIONS OF RESPA 12 U.S.C. 2601 ET SEQ.

145.     All preceding paragraphs are incorporated as though fully set forth herein.

146.     Defendants failed to timely inform Plaintiff of any alleged Appointments, Assignments and transfers of the mortgage in violation RESPA.

147.     Defendants failed to timely notify Plaintiff of any change of servicers.

148.     Plaintiff have previously made written demands to Defendants to show evidence

of standing to claim a debt and Defendants have refused to evidence such standing.

**COUNT XV.**
SLANDER OF TITLE/PETITION TO QUIET TITLE

149.      Plaintiff incorporates by this reference each preceding paragraph of this

Complaint as if set forth fully herein.

150.      The Defendants have knowingly and maliciously communicated, in writing, false

statements that have the effect of disparaging the Plaintiff's title to property. The

Plaintiff has incurred special damage as a result.

151.      Bank of New York-Mellon has no legally enforceable claim, interest or standing

to sue as to the Note or Mortgage in question and the claim is a cloud on the Defendants'

title and should be quieted under Pennsylvania law.

152.      Plaintiff is the rightful owners of the subject property.

153.      Plaintiff is the legal titleholders of his property.

154.      Mers, BAC, GMM and Bank of New York-Mellon have knowingly and

unlawfully caused a cloud to be recorded against the title of the Plaintiff's property and

have caused to be sent notices of default and foreclosures, and have served and filed

mortgage documents that claim an interest in the property of the Plaintiff.

155.      Any purported transfer of any interest in the Plaintiff's real estate was wrongful

and invalid because the endorsements, assignments, foreclosures or purported

foreclosures were invalid and were not conducted in accordance with the laws of

Pennsylvania.

156.      MERS, BAC, GMM and Bank of New York-Mellon knew or should have known

that such transfers were wrongful and invalid and the publication of an ownership interest

in the Plaintiff's property is, therefore false.

157.      The recording of the mortgages published the information to third parties.

158.      Because of said wrongful publication of an ownership interest in the Plaintiff's

property, Plaintiff have incurred damages and will continue to incur attorneys' fees and

costs related to this litigation, in an amount to be proven at trial.

159.      Plaintiff seeks a declaratory judgment against Defendants stating that Defendants

have violated Plaintiff's rights and that the Defendants had and have no right to hold

mortgages in the name of Bank of New York-Mellon and/or foreclose on the Plaintiff's

property and that the Defendants are entitled to no further payments from the Plaintiff or

recognition in Plaintiff's Title to his property.

160.      The Plaintiff are entitled to a reformation of these notes as unsecured notes or as

partially or wholly discharged notes and a right to reformation of the contracts with the

persons or entities who are owed obligations because of funding of the loans of the

Plaintiff.

## COUNT XVI.
### FRAUD AND MISREPRESENTATION
### PENNSYLVANIA UNFAIR TRADE PRACTICES
73 P.S. §§201-1 -201-9.2 ET SEQ.

161.      Plaintiff re-alleges and affirms each preceding paragraph of this Complaint and

incorporates such as if alleged anew.

162.      In 2008, Defendants intentionally instituted unlawful foreclosure against Plaintiff

based upon fraudulent documents in the Allegheny County Court.

163.      The deceptive acts of the Defendants and their employees and agents resulted in a

multitude of misrepresentations, including but not limited to the true identity of the

Lender, and the fraudulent misrepresentation as to the Mortgagee.

164.      The Defendants induced the Plaintiff to enter into the transaction when there

existed in the inducement and execution material representations that were false and were

known to be false or were made recklessly, which inducement was reasonably acted upon

by Plaintiff and acted upon in reliance thereon and Plaintiff have suffered injury

proximately due to such.

165.      The scheme employed by Defendants intentionally had the capacity and tendency

to deceive Plaintiff, and did deceive Plaintiff and the Clerk of Court.

166.      The acts of the Defendants violated standards of fair trade practices and affected

commerce.

167.      As a result of the Defendants' unfair and deceptive trade practices, Plaintiff was

proximately injured in his business and his person.

168.      This foreclosure has been continued with no date set for a hearing.

169.      The deceptive acts of the Defendants constitute fraudulent misrepresentation and

the Defendants are jointly and severally liable for their acts of fraud by their

misrepresentation and all damages stemming from such, including punitive damages and

attorney's fees.

## COUNT XVII.
### NEGLIGENT SUPERVISION

170.      Plaintiff re-alleges and affirms each preceding paragraph of this Complaint and

incorporates such as if alleged anew.

171.      Defendants had a duty of care to supervise the actions of their employees and

agents.

172.      Defendant's employees and/or agents' actions, as alleged previously, were

unlawful and violated Plaintiff's property rights.

173.      Defendants knew or should have known that their employees and/or agents were

acting unlawfully.

174.     As a result of the Defendants' negligent supervision, Plaintiff was proximately

injured by the unlawful acts of their employees and/or agents.

175.     An agency relationship exists between the individual defendants and the corporate

defendants.

176.     The actions of the individual defendants were done on behalf of and at the

direction of the corporate defendants and within the scope of their agency relationship.

177.     As a result of the actions of the individual defendants, the Plaintiff were injured.

### COUNT XVIII.
COMMON LAW FRAUD AND INJURIOUS FALSEHOOD

178.     Plaintiff incorporate by this reference each paragraph of this Complaint as if set

forth fully herein.

179.     The publicly filed false mortgage assignments enabled all of the Defendants to

perpetrate the fraudulent foreclosure.

180.     All of the Defendants knew or should have known the material representations

were false.

181.     The material representations to the Plaintiff were made so that the Court and the

Plaintiff would believe that the Defendants had a legitimate claim in the property.  The

Plaintiff relied on such and the Plaintiff was injured as a result with the facing of

foreclosure litigation.

182.     Defendants fraudulently concealed their wrongdoings and prevented Plaintiff

from discovering their cause of action.

183.     Plaintiff has been injured by the fraud by Defendants and has remained in

ignorance of it without any fault or want of diligence or care on his part.

184.     Defendants made many misleading statements that the loan contained certain

terms desirable to the consumer when it did not.

185.     Defendants' use of deceit or trickery caused Plaintiff to act to their disadvantage.

**WHEREFORE,** Plaintiff demand judgment against Defendants as follows:

1.  Judgment against Defendants as Jointly and Severally Liable for all issues in excess
    of $1,000,000.00.

2.  Costs and attorneys fees pursuant to 18 USC § 1964(c) and relevant Pennsylvania
    law;

3.  Actual and statutory damages for violations of FDCPA pursuant to 15 USC § 1692(k)
    and relevant Pennsylvania law;

4.  Costs and Attorneys Fees pursuant to 15 USC § 1692(k) and relevant Pennsylvania
    law;

5.  Rescission of the entire Mortgage and note amounting to clear title to property with
    fixtures as a result of the aforementioned, and

6.  Damages for the Unfair and Deceptive Acts and Practices and

7.  Damages in the amount of three times the interest paid and clear title to the property
    stemming from the exorbitant interest, and

8.  Judgment against Defendants for return of the down payment, and other payments, as
    well as interest on the above amount, and

9.  Cost of litigation as provided in Title 15 United States Code, Section 1601 et. seq.,

10. Pre-Judgment and post judgment interest at the maximum rate allowable by law;

11. Compensatory damages;

12. Punitive damages as allowed by law;

13. Such other and further relief available under all applicable under state and federal
    laws and any relief the court deems just and appropriate;

/s/ H.E. Luke Lucas
H.E. Luke Lucas, Esquire
PA Bar # 61124
Lucas & Nowak, LLP
2631 E. Geer St.
Durham, NC 27704
        919-237-1934
lucasandnowak@nc.rr.com
*Attorneys for Plaintiff Jayson Schott*


DEMAND FOR JURY TRIAL pursuant to rule 38(a) of the F.R.C.P.
Plaintiff demands a jury trial as to all issues triable by a jury.


Respectfully submitted this October 18, 2011.

/s/ H.E. Luke Lucas
H.E. Luke Lucas, Esquire
PA Bar # 61124
lucasandnowak@nc.rr.com